**Igor MAKAROV, Petitioner,**

v.

**Alberto R. GONZALES, Respondent.**

No. 02–4207.

United States Court of Appeals,
Second Circuit.

June 6, 2005.

Andre R. Sobelevsky, New York, New York, for Petitioner–Appellant.

Patricia Allen Conover, Assistant United States Attorney, Middle District of Alabama, Montgomery, Alabama (Luera G. Canary, United States Attorney, on the brief), for Respondent–Appellee.

Present: STRAUB, HALL, Circuit Judges, and KAPLAN, District Judge.[1]

**SUMMARY ORDER**

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the petition for review is hereby **DENIED.**

Igor Makarov ("Makarov"), a native and citizen of Russia, petitions this Court pursuant to section 242(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(b), for review of a May 14, 2002 decision of the Board of Immigration Appeals ("BIA"). The BIA summarily affirmed the decision of the Immigration Judge ("IJ") denying Makarov's application for asylum and withholding of removal. We assume the parties' familiarity with the facts, decision below, and issues on appeal.

Where the BIA summarily affirms the IJ's decision, we review the decision of the

---

**1.** The Honorable Lewis A. Kaplan, United States District Judge, Southern District of New York, sitting by designation.

930

IJ directly. *Secaida–Rosales v. INS,* 331 F.3d 297, 305 (2d Cir.2003). We review the IJ's findings of fact under the substantial evidence test. *See Osorio v. INS,* 18 F.3d 1017, 1022 (2d Cir.1994). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

An asylum applicant bears the burden of establishing that he experienced severe past persecution or has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See Tian–Yong Chen v. INS,* 359 F.3d 121, 126 (2d Cir.2004); 8 C.F.R. § 208.13(b). An applicant for withholding of deportation bears the greater burden of establishing that his "life or freedom would be threatened in [his native] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). However, in the asylum context, when an applicant demonstrates past persecution, a presumption arises that he has a well-founded fear of future persecution. The burden then shifts to the government to prove by a preponderance of the evidence that conditions in the applicant's country have changed, such that he no longer has a reasonable fear of persecution there. *See* 8 C.F.R. § 208.13(b)(1)(i)(A).

Makarov entered the United States in 1993 on a tourist's visa, and applied for asylum in the same year. Makarov's claim was based on his past persecution for anti-Communist activities. He presented extensive evidence that, although never part of a formal dissident organization, he continually participated in anti-Communist activities and was persecuted for his partic-

ipation. As a youth, Makarov and a small group of friends met regularly to discuss political issues, and issued a letter protesting the 1956 Soviet invasion of Hungary. They were informed on by acquaintances, and called in for interrogation. In 1958, Makarov and a similarly-minded friend, Boris Bereznyakov, attempted to cross the southern border of the Soviet Union. Makarov was sentenced to five years in a labor camp for "betraying the Homeland," and subsequently tried in prison for "disobedience" and sentenced to harsher conditions.

Shortly after his release in 1963, while employed as a construction worker, he suffered further punishment for encouraging co-workers to strike for better conditions and refusing to build over a cemetery. He also continued his broader political activities with his colleague Bereznyakov. Bereznyakov was tried for "anti-Soviet propaganda," and Makarov was threatened with prison for attending his trial. Makarov continued to publish criticism of the Soviet Union, talk openly about his views, and distribute fliers. He was frequently searched on the street by government agents, and he was frequently called in for interrogation.

When Gorbachev loosened restrictions somewhat on political expression in the 1980s, Makarov participated in larger anti-Communist protests, and later, during the early 1990s, campaigned against the Communists in elections. He continued to be a target of government harassment. He also suffered harassment, and some violence, at the hands of Communists who worked in the building where Makarov was employed as an electrician. In August, 1993, after Makarov had left for the United States, his friend and co-activist Boris Bereznyakov was beaten to death by unidentified assailants. Makarov expressed his belief that the government, still dominated by Communists, had Bereznyakov

killed to silence him. He also asserted that he continues to have "personal enemies" in Russia, and that his mother has received threats by telephone, but did not particularize these assertions.

The IJ, in a decision issued December 30, 1998, found that, although Makarov had established clear past persecution, the government had provided sufficient evidence of improved country conditions to rebut the presumption that his fear of future persecution was therefore well founded. In reaching his conclusion, the IJ relied on the testimony of Makarov's expert witness, Dr. Ian Bremmer, that only high-profile former dissidents are at risk for future persecution in Russia. The IJ found that, although an active dissident, Makarov was "rank and file" and therefore not in danger of being targeted in the future. The IJ also relied on a June 30, 1997 letter from the State Department reporting that "[i]ndividuals who experienced persecution for political dissidence in Russia under the communists are not generally mistreated there at present. On the contrary, they participate openly in public life and have their own organizations."

After a full review of the record, we affirm the IJ's decision. Without in any way belittling Makarov's bravery or commitment as a political dissident or the persecution he suffered in the past, we find that the IJ had sufficient evidence to reasonably conclude that, because of changed conditions in Russia, Makarov is no longer in danger of persecution for his anti-Communist beliefs. We have considered Makarov's remaining contentions and find them to be without merit.[2]

For the foregoing reasons the petition for review are DENIED.

---

**2.** It is not clear whether Makarov is arguing that the past persecution he suffered was so extreme as to constitute a sufficient basis for asylum regardless of whether he has reason to fear future persecution. *See* 8 C.F.R. § 208.13(b)(1)(iii) (setting forth "severe" past persecution as an independent ground for asylum). Assuming he does so argue, we find that his past persecution does not meet this standard. *See Bucur v. INS,* 109 F.3d 399, 404–05 (7th Cir.1997) (holding that the past persecution ground for asylum is intended for applicants who have been subjected to persecution so "especially heinous" that to force them to return would be emotionally cruel).

Makarov also contends on appeal that he fears persecution as a Jew. However, Makarov expressly declined to claim religious or racial persecution below, and at any rate provides no argument or evidence for such a claim here except for a vague reference to State Department findings that anti-Semitic and fascist groups operate in Russia and are not actively policed by the authorities.